Our final case this morning is Alvarenga-Flores v. Sessions. May it please the Court, my name is Abby Seif. I'm here on behalf of the petitioner, Mr. Gerson Alvarenga-Flores. We're here today, Your Honors, to ask for a full remand of this case for a new hearing because Mr. Alvarenga-Flores did not receive a fair hearing at this case, and he didn't receive a full review of his immigration hearing before the Board of Immigration Appeals. For that reason, we ask that you remand. We realize that one of the first issues that comes before this Court is the one-year bar in your jurisdiction to review the one-year bar, and I believe in this case you have several grounds to review the asylum case and the one-year bar. Firstly, the BIA failed in its duty under 8 CFR 1003.1 to review the asylum claim. At the Board, the petitioner did not waive the issue of the error in the asylum claim. Rather, five times in the brief to the BIA, the petitioner requested that the BIA review the asylum claim. But he didn't argue change to extraordinary circumstances to justify the untimely filing. That's correct because that was not the reason given by the judge for denying the asylum claim. Well, but that's the, the judge denied the asylum claim because it was untimely. The application was three years. We would. It came three years after his entry into this country, and there's a one-year requirement, and so the judge found it untimely, and to overcome that untimeliness finding before the Board, there would need to be a showing of change to extraordinary circumstances, and there was no effort made to make that showing. I would disagree with you on two points. One, I think that the oral decision of the judge and the written decision of the immigration judge states, and he says, my only basis for denying the applications is the credibility finding. I don't believe him. Well, that even if the applications that he did consider on the merits, which were the withholding and the cat claim, he didn't consider the asylum claim on the merits. He said it was untimely. Which we believe is error in and of itself. Well, it was, it came three years after his entry, right? Correct. So it's clearly untimely. No doubt. It was clearly untimely, but he still allowed a hearing on his asylum claim and his extraordinary circumstances claim and change of country conditions claim. The second part, but not the first part. He can't get merits review of the asylum claim if it's untimely. He has to overcome the time bar first, and that requires a showing of extraordinary circumstances or changed country conditions, and he made neither of those showings, either before the IJ or before the BIA. I would respectfully disagree that the CFR and the statutes both say that the asylum applicant has a right to an evidentiary hearing before the judge makes a determination as to the merits of his claim. And the BIA itself in... The merits were never before the agency because the claim was untimely. I disagree, Your Honor. And in order to overcome the time bar, you have to make the required statutory showing or regulatory showing of extraordinary circumstances or changed country conditions, and there was no effort to overcome that, so I think you better move on to your withholding and CAT claims. Yes, Your Honor. I would just point out that at the IJ level, there was an attempt to make an evidentiary record of the extraordinary circumstances and the changed circumstances, but he was prevented from making an evidentiary record. Going to the hearing, can you briefly tell me the two parents' letters were not considered by the immigration judge at all? Correct. They were in English, signed by them, but how were they actually prepared? Is there any record of how they were prepared? I think that there was testimony at the hearing that they were prepared exactly the way the petitioner's statement was prepared, which was there was a Spanish-speaking attorney that was representing the petitioner at the time. She spoke to them over the phone, and she translated it into English and mailed it to him just as she did the petitioner in the detention center. She spoke to him over the phone, translated it, so they're reviewing a document. All right. Do you believe it was improper for the immigration judge to completely disregard those letters? Absolutely. What about his argument that all their information was second-hand, that they didn't know about the incident on the shooting and then the incident on the bus? Again, it doesn't mean it has no weight. Just because that it was second-hand, everything other than my petitioner's own testimony would be second-hand. And isn't their statements about the threats that they were receiving and the son was receiving, certainly their own threats, that's first-hand, correct? Correct. Thank you, Your Honor. Go ahead. Yes, I would agree with that. And not only the parent's statements were ignored by the judge, but as I put in the brief, there were 10 other documents that corroborated Mr. Alvarenga's statements that were completely ignored by the immigration judge as well as the BIA. It is a totality-of-the-circumstances test for credibility, supposed to look at the record as a whole, and it's very clear that neither the IJ nor the BIA looked at the record as a whole. The parents refused to testify by telephone, correct? No, Your Honor. I don't think there was a refusal to testify by phone. I think it was a limit in time. They had arranged to have the lawyer testify, and they were arranging for him to come by phone. And I think that it was my-it's not in the record exactly, but my understanding is these are four-hour hearings. You have the afternoon for your hearing. And so I think the presumption was they would have time for two live witnesses, and it's very common in the immigration court for the rest of the witnesses to appear by affidavit. So that would not have been unusual by any means, that many witnesses are there by affidavit. Is there an explanation for why on the arrest warrant the victim is the same person who was in the cab, who was killed in the cab, is also on the arrest warrant for your client? I am not surprised by that at all. I mean, what my client has been saying over and over again is that this is corruption, this is fraud, you know, and this is a part of it. There are some documents that were presented in the bond hearing that were not presented at the immigration hearing. But the fact that there was no Foreign Service officer that signed off on these warrants that went to Interpol is what they were arguing from the get-go, saying these are not valid. And there's a reason there's a bilateral treaty with El Salvador that says that we have to have a Foreign Service officer on the ground to validate that these are valid documents. I mean, there's a reason this is not an extradition hearing. It's because those underlying documents were not, you know, were not valid. And the fact that they are here, I know I reserved three minutes for rebuttal, so I think that that means I only have ten seconds. The fact that he has an arrest warrant does not at all, I think, undo everything he's been saying for the last three years, that MS-13 is coming after him because he witnessed the murder. I would reserve the rest of my time for rebuttal. That's fine. Ms. Singer. May it please the Court. My name is Jennifer Singer, and I represent the United States Attorney General, the respondent in this matter. The central question in this case is whether Petitioner's claim is credible, and the answer to that question is no. Under the REAL ID Act, an immigration judge may base an adverse credibility determination on a petitioner's statements, written or oral, and wherever and whenever made. And here, Petitioner's testimony is inconsistent with the statements he made in his written statement. And I just want to point out that the written statement was made five months before his testimony, so we're not talking about a huge span of time which Petitioner's memory could somewhat fade and he couldn't recall certain details. For example, with regard to the taxi incident, in his written version of events, he said that him and his three friends were in the taxi, that the gang members stopped the taxi and began shooting at the taxi, and then his friend, Jose, on his own volition, exited the taxi from the front passenger seat of the car, attempted to run away, created diversion, somehow got back in the taxi, and the taxi sped off. The taxi wouldn't take them to the hospital, and then Petitioner and two of the friends walked to the police station. In his testimony, which again was only five months later, Petitioner stated that him and his three friends were all seated in the back of the taxi cab, that the gang members came, began shooting at the car, that his friend, Jose, was forcibly removed from the car, that he began to struggle, and then in the struggle, and not in some volitional attempt to escape and create a diversion, in the struggle, that is the struggle that created the diversion, that in that, the taxi cab sped away, but Jose didn't make it back into the taxi. He was left out with Luis, which is the individual who was murdered in this incident, and that Petitioner and his fourth friend made it back, and it was just them two who were able to escape in the taxi. These are major inconsistencies. They are not minor inconsistencies. With regard to the bus incident, in one version of events, he claims he got in from the front, gang members came in from the back, approached him, and he escaped from the situation from the front door. In the other version of events, he got in from the back door, the gang members came in from the front door, they began to approach him, and he escaped from the back door. Aren't each of these two incidents, though, over in a matter of seconds? These are not lengthy interactions. I think he even testified the shooting incident happened in a matter of seconds. The walk back and getting to the hospital took a while, but the incident itself, where they were sitting and what happened was a very quick incident. It's true, but when he had the opportunity to explain why the inconsistencies, he never said, oh, it happened so fast, maybe I'm misremembering. He just said, I don't know why the inconsistencies are there. Also, these are significant facts. They're not minor details, whether the gunman was wearing a purple shirt or a green shirt. These are the sequence of events, and he can't remember basic sequence of events. I mean, a lot of it, too, has to do with his escape. Did he escape through the back of the bus, or did he escape through the front of the bus? And they're details that you would expect someone would remember. He's saying that there's a hail of bullets in the taxi, he had to jump out of a moving bus. You would think these would be details that he would recall. Also, I mean, I think you're going to whether they might be, whether he can't remember them or if they're immaterial, but I would argue that they are material and they are things he should remember. A minor inconsistency would be, again, like if the gunman was wearing a purple shirt or a green shirt, but that's not what happened here. Neither are these inconsistencies ancillary. They don't have to do with what classes he was attending in university or what he had for breakfast the day of the incident. These go to the specific incidents that underlie his claim for asylum and have to do with the entire narrative of his claims. And because there's inconsistencies in both the bases of his claim for asylum, it calls into question his entire story. Also, the explanations for the inconsistencies were not persuasive. We're talking about just the claim for withholding and relief under the convention. We're not talking about the asylum claim because the board said there was a waiver because there was no attempt to show changed country conditions or extraordinary circumstances to overcome the time bar? That's correct. The immigration judge did find that the asylum application was time bar, but the board did find that the adverse credibility determination because of that. The remaining claims, the withholding claim and the CAT claim, which are the only ones that were adjudicated under the merits. I think the board also mentioned the asylum application. But in general, if I say asylum, I just say it broadly because asylum is a lower burden, so if you can't meet that, you can't meet the other ones. So it's more of a general statement. We don't have jurisdiction to consider a time barred asylum claim. That's correct. Let's talk about the claims we actually have before us. In terms of his explanations for the inconsistencies, I would just like to point out that his explanations were not persuasive. He was given an opportunity to correct his statement. He testified that he reviewed it with his attorneys and that he signed off on it. Then he was given another opportunity to review it. He did make changes to the written declaration. He changed one of his friend's names and he changed the date. He did not change any of the other inconsistencies. He had the opportunity to do it. He made changes and he didn't change simple things like where people were sitting in the car, how people escaped, what door he entered. I think that's very telling of the veracity of what he said before the IJ. And then finally, he did nothing to rehabilitate his claim. The letters that he submitted from his purported parents were written in English and written as if the parents wrote them themselves, and it's undisputed that they don't understand English. Generally, I mean, per the immigration court handbook, an affidavit or a declaration in English by a person who does not understand English must include a certificate of interpretation stating that the document was read to the person in the language the person understands and states that the person understood it. That's Chapter 3.3A of the Immigration Court Practice Manual. That was not included in the statement. Without that, on the face of the document we have, you don't know that what the parents were attesting to really understood what they were reading and signing. And based upon those circumstances, the immigration judge was completely in his discretion for giving it little to no evidentiary weight. And absent the corroborating evidence, petitioners... Well, he actually said that one of the reasons he wasn't considering is because they had no firsthand knowledge of the incident in the cab or the bus. But the rest of their, and that's true, of course, but the rest of their letters talk about the threats they themselves received, which would be corroborative of the fact that a gang was going after him and corroborative of his overall position that if he gets sent back to El Salvador, they're going to kill him. I do agree that the parents did have personal knowledge if the petitioner is to be believed, but whatever error that is on that part of the immigration judge, the board affirmed the corroboration finding only on the finding that it was, that little evidentiary weight should be accorded to it on the English language grounds, not on the fact that they didn't have personal knowledge. So I would argue that any error on the immigration judge's finding in that regard is harmless. If there's no further questions, I might just come up. Thank you. Just while reasonable minds may differ, the standard is whether a reasonable fact finder would be compelled to conclude that petitioner was credible, and the circumstances here does not compel that conclusion. Thank you. Thank you. I think that a reasonable fact finder would be compelled to find that petitioner was credible. I think to hold on to minor inconsistencies, which actually are much more similar to a purple or green shirt, or whether or not he was wearing a purple or green shirt, in reference to the nexus between what the discrepancy was and credibility, whether the people came from the back of the bus or the front of the bus, or whether his friend was sitting in the middle seat and hopped over the front and went out, don't have a clear nexus to credibility that the rest of the documents that the courts ignored do. For example, ignoring the country reports that say that corruption is rampant, that has a nexus to the credibility of a petitioner who's saying that the government is corrupt and coming after me. As you have pointed out, all of the statements in the parent statements and the other facts, but I also wanted to point to what she was saying about there being no certificate of translation on the parent statement. There was also no certificate of translation on the petitioner statement. You can't throw out two and then hang your hat on the same thing on the other. Either they're both not credible or they're all credible, but you can't say, well, I'm going to throw these two out because there's no certificate of translation, but for his, we're going to hold them to every small word in his, even though no certificate of translation on that one either. The truth of the matter is it's a credible claim. He's saying MS-13 is coming after him, and there's 10 documents that I listed in the court record that support that. There are zero documents in the court record that support the IJ's conclusion that the petitioner was not credible, other than he couldn't remember from which direction. And as I put in my reply brief, he also testified he had earphones on when he entered the bus, and his first statement when asked by his own attorney, when he was actually being allowed to present his own evidence, was that he saw the one MS-13 coming from him in front of him, and he saw one behind him. And there's nothing in his direct testimony to indicate that he saw from which direction they came on. In fact, he very clearly says he did not see them coming on with him, and then they were coming from the front, and then there was one behind him. These don't go to credibility. It's memory, like you said, and the fact that he didn't give you verbatim the exact words of the exact statement that he wrote five months before does not go against his credibility. It goes for his credibility.  It makes it more real, not less real, that there's some small errors in it. If he gave you verbatim exactly what he had written before, then there would be some question that he memorized it. Also, I would like to remind you that he gave essentially the same story at the credible fear interview that was also in the record. All right, thank you. Our thanks to both counsel. The case is taken under advisement, and the court will be in recess. Thank you. Thank you.